**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

BERNAN SUNBUL FIDAN,

               Plaintiff,

        v.

MARBA PRODUCT, LLC, and AHMET
CAN,

               Defendants.

Case No. 2:24-cv-09788 (BRM) (AME)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

       Before this Court is Defendants Marba Product, LLC ("Marba") and Ahmet Can's ("Can")

(collectively, "Defendants") Motion to Dismiss[1] Plaintiff Bernan Sunbul Fidan's ("Plaintiff")

Complaint (ECF No. 1). (ECF No. 13 (the "Motion").) Plaintiff filed an Opposition (ECF No. 15),

and Defendants filed a Reply (ECF No. 16). Having reviewed and considered the parties'

submissions filed in connection with the Motion and having declined to hold oral argument

pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good

cause having been shown, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.    **BACKGROUND**

    **A.  Factual Background**

       For purposes of this motion to dismiss, the Court accepts the factual allegations in the

complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v.

Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document

---

[1] Defendants' Motion was styled as a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 13.) On March 5, 2025, the Court indicated it would treat the Motion as a motion to dismiss under Federal Rule of Civil Procedure 12. (ECF No. 14.)

integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Marba is a food production company incorporated and authorized to operate in New Jersey, with a location in the city of Clifton. (ECF No. 1 ¶¶ 14–15, 17, 40–41.) Can, also a resident of New Jersey, is the owner of Marba and allegedly "exercised control over the employment terms and conditions of Plaintiff and similarly situated individuals." (*Id.* ¶¶ 20–22.) Plaintiff is a resident of Wayne, New Jersey who was employed by Marba from around September 2022 through the filing of the Complaint. (*Id.* ¶¶ 39, 11–13.) Plaintiff seeks to represent a class of all other "non-exempt employees employed by Defendants on or after the date that is six years before the filing of the Complaint" (the "Class"), as well as institute an opt-in collective action pursuant to the Fair Labor Standards Act ("FLSA") of "all non-exempt current and former employees employed by Defendants on or after the date that is three years before the filing of the Complaint" (the "Collective"). (*Id.* ¶¶ 27–38.)

Plaintiff brings twelve causes of action on fair labor and discrimination grounds. (*Id.* ¶¶ 90–179.) Under the New Jersey State Wage and Hour Law ("NJWHL") and the FLSA, Plaintiff brings claims for unpaid overtime and minimum wages[2] and retaliation (Causes of Action 1–6). (*Id.* ¶¶ 90–136.) Additionally, Plaintiff alleges a violation of the Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:11-4.10, because she was allegedly retaliated against for disclosing violations of fair labor laws to her "supervisor or public body" (Cause of Action 7). (*Id.* ¶¶ 137–53.) Plaintiff also brings disability and ethnicity discrimination claims under the New

---

[2] Defendants do not move to dismiss Plaintiff's unpaid overtime and minimum wage claims under the FLSA and NJWHL, Causes of Action 1–4.

Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1–49, as well as a claim for retaliation under the statute (Causes of Action 8–11). (*Id.* ¶¶ 154–75.) Finally, Plaintiff alleges a hostile work environment claim (Cause of Action 12). (*Id.* ¶¶ 176–79.) Plaintiff seeks "unpaid overtime wages, compensatory and liquidated damages" under the relevant statutes and regulations, jointly and severally from Defendants, as well as punitive damages; a declaratory judgment that Defendants' practices are unlawful and willful under the FLSA and New Jersey statutes and an injunction requiring payment of statutorily required wages and benefits; certification of collective and class actions for the FLSA and New Jersey law claims, respectively; disclosure of the names, work histories, contact information, and potential damages for each putative class and collective member; an incentive award for Plaintiff; attorneys' fees and costs; and any other relief the Court deems just and proper. (*Id.* Prayer for Relief.)

### 1. Wage and Labor Allegations

Plaintiff alleges she began working for Marba in September 2022, first as a "production worker" and then a "dough maker" in Marba's "production department," where her duties included "dough making, packing and labeling the packages." (*Id.* ¶¶ 39–41.) Plaintiff alleges she was a non-exempt employee who made $14.00 an hour from the start of her employment until September 30, 2023, and $16.50 an hour from October 1, 2023, onward. (*Id.* ¶¶ 42–44.) Plaintiff contends she worked at least five days a week and at least forty hours per week, and Defendants kept records of her start and end times, hours worked, weekly shifts, and wages paid, as well as for the Class members. (*Id.* ¶¶ 45–50.) Plaintiff alleges she worked "an average of 10 hours of overtime per week" from the start of her employment, but she never received overtime pay. (*Id.* ¶¶ 46, 49.) Specifically, she was regularly stripped of "at least 2 hours per day of earned overtime," for which she should have received "compensation at the rate of time and a half the regular rate of each hour

worked over forty." (*Id.* ¶¶ 50–54.) In total, Plaintiff contends she "worked and was not paid for at least 1040 hours of overtime," totaling at least $23,790 in unpaid overtime compensation. (*Id.* ¶¶ 59–60.)

When Plaintiff complained about Defendants' failure to pay overtime and demanded compensation, Defendants allegedly refused and stated they "do not and will not pay overtime." (*Id.* ¶ 55.) But Plaintiff contends Defendants were aware she regularly worked overtime based on their records and control and supervision of Plaintiff. (*Id.* ¶ 56.) Plaintiff also alleges "Defendants never instructed Plaintiff not to work overtime." (*Id.* ¶ 57.) In addition, Plaintiff never received an initial or annual wage notice and alleges Defendants "failed to provide Plaintiff with proper wage statements with each payment received." (*Id.* ¶¶ 61–62.) Therefore, Plaintiff alleges Defendants knowingly and willfully operated in violation of the NJWHL and FLSA. (*Id.* ¶¶ 63–73.)

### 2. Discrimination Allegations

Plaintiff alleges Defendants discriminated against her based on her Kurdish ethnicity. (*Id.* ¶¶ 74–89.) Plaintiff alleges Can is of non-Kurdish Turkish ethnicity, as is the supervisor Defendants hired in July 2023, Arife Topbas ("Topbas"). (*Id.* ¶¶ 74–76.) Topbas would allegedly question Plaintiff about "her beliefs and support of" Kurdish rights and grew "visibly angry" over their difference of opinion. (*Id.* ¶¶ 77–78.) Plaintiff alleges Can was aware of these heated arguments but did not intervene, and Defendants did not investigate or take any action "to address the harassment and hostility that Plaintiff was openly subjected to." (*Id.* ¶¶ 79–80.)

Plaintiff alleges that on July 25, 2024, Topbas ordered her to switch from working in the dough production and packaging department to clean the "onion cutting machine." (*Id.* ¶ 81.) Plaintiff contends Topbas was aware she was not familiar with the onion cutting machine, and there were other available workers who could handle this cleaning task, but she chose Plaintiff

because of her ethnicity and beliefs. (*Id.* ¶¶ 81–83.) In the process of cleaning the onion cutting machine, Plaintiff severed "the tip of her index finger." (*Id.* ¶ 84.) Plaintiff alleges Can refused to call 911. (*Id.* ¶ 85.) Instead, another member of the management team drove her to the emergency room. (*Id.*) Plaintiff filed a worker's compensation claim and was scheduled to return to work on September 16, 2024. (*Id.* ¶¶ 86–88.) Plaintiff alleges "Defendants have refused and failed to provide her with any form of reasonable accommodation or any work" by claiming there was no work she could perform at the company and refusing to pay her. (*Id.* ¶¶ 87–89.) As a result, Plaintiff alleges she suffers "constant and ongoing financial and emotional damages." (*Id.* ¶ 89.)

**B.  Procedural History**

Plaintiff filed her complaint on October 15, 2024. (*Id.*) Pursuant to the Court's preferences, Defendants submitted a letter requesting a pre-motion conference on February 2, 2025 (ECF No. 9), and Plaintiff submitted a responsive letter on February 17, 2025 (ECF No. 11). After the Court concluded a pre-motion conference would not be beneficial (ECF No. 12), Defendants filed the Motion on February 25, 2025 (ECF No. 13). On March 11, 2025, Plaintiff filed an Opposition. (ECF No. 15.) Defendants replied on March 21, 2025. (ECF No. 16.)

**II.  LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III. DECISION

Defendants seek to dismiss Plaintiff's fifth through twelfth causes of action.[3] Defendant first argues Plaintiff's retaliation claims fail because she does not identify a protected activity which led to an adverse employment action and because Defendants had a legitimate, independent

---

[3] The Court notes Defendants attached a declaration from an employee of Marba (the "Employee Declaration") to the Motion, which was styled alternatively as one for summary judgment, and some of Defendants' arguments rely on the facts contained therein. (ECF Nos. 13-1, 13-2.) As discussed, the Court is treating the Motion as one to dismiss for failure to state a claim upon which relief can be granted; therefore, it will not consider the content of the Employee Declaration or credit any of Defendants' arguments premised on the facts it contains. (ECF No. 14.) *See also In re Burlington*, 114 F.3d at 1426 ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.").

basis to limit Plaintiff's work. (ECF No. 13-1 at 7–9.) Defendants also contend Plaintiff failed to allege essential elements of her ethnicity and disability discrimination claims. (*Id.* at 9–12.) Finally, Defendants assert Plaintiff's hostile work environment claim fails because she does not adequately allege intentional discrimination based on ethnicity. (*Id.* at 12–13.)

Plaintiff rejects these arguments, asserting her claims were adequately stated. (ECF No. 15.) Plaintiff also states Defendants terminated her employment "since this action was filed and served on Defendants" and requests leave to amend the Complaint to incorporate those events if the Court so requires.[4] (*Id.* at 3.) Naturally, Defendants contend this is improper, and the Court should ignore this development as inadequately pled. (ECF No. 16 at 1.) The Court will address Plaintiff's discrimination claims (including the hostile work environment claim) first, as the elements of these claims may rise or fall independently of Plaintiff's subsequent termination.

### A. Discrimination Claims

#### 1. Ethnicity Discrimination

Defendants argue Plaintiff's NJLAD ethnicity discrimination claims (Counts 9 and 10) fail because she insufficiently alleges a discriminatory motive by Defendants. (ECF No. 13-1 at 9–10.) Defendants characterize Plaintiff's allegations that her negative interactions with Topbas and their alleged failure to provide back pay and accommodations were due to her Kurdish ethnicity as "legal conclusions unsupported by any factual basis." (*Id.* at 10.) Defendants also argue Plaintiff fails to allege "similarly situated non-Kurdish employees were treated more favorably," and that Plaintiff does not allege she raised her concerns to management. (*Id.* at 11.) While Defendants also make arguments about Marba's work assignment policies, business practices, and workforce

---

[4] Plaintiff also attaches a declaration containing her recitation of the facts surrounding her termination. (ECF No. 15-4.) Like Defendants' Employee Declaration, this document is not properly before the Court on a motion to dismiss. *See In re Burlington*, 114 F.3d at 1426.

makeup, these rely on the Employee Declaration and will not be considered by the Court at the pleading stage. *See supra* n.3.

Plaintiff contends, as a general matter, she has no obligation to make a *prima facie* case for employment discrimination at the pleading stage, but even so, the bar to establish one is low. (ECF No. 15 at 8–9 (citing *Kelly v. HD Supply Holdings, Inc.*, Civ. A. No. 14–372, 2014 WL 5512251, at *3–4 (D.N.J. 2014); *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006)).) Plaintiff also argues New Jersey courts have adopted "the same burden-shifting methodology articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)," for discrimination claims under NJLAD. (*Id.* at 8 (also citing *Andersen v. Exxon Co., U.S.A.*, 446 A.2d 486, 490–91 (N.J. 1982)).) Plaintiff asserts she has made a *prima facie* claim of discrimination based on her Kurdish ethnicity because: (1) she alleges Can and Topbas do not belong to the same Turkish ethnicity as her; (2) Topbas repeatedly pressed Plaintiff on her beliefs about rights for the Kurdish people, and Plaintiff's responses made Topbas visibly angry; (3) Can was aware of the dynamic between Plaintiff and Topbas but failed to intervene; (4) despite knowing Plaintiff was unfamiliar with the onion cutting machine, Topbas ordered Plaintiff to clean it, leading to Plaintiff's serious injury; and (5) Defendants refused to call 911 when she was injured. (*Id.* at 9–10.) Plaintiff also contends these events occurred close in time to when Defendants hired Topbas. (*Id.* at 10.) Therefore, Plaintiff argues the Complaint sufficiently alleges she is a member of a protected group who was qualified for her role, and who suffered an "adverse employment decision" in the form of her reassignment that has a nexus to the hiring of Topbas as her supervisor, thus pleading the elements of a discrimination claim. (*Id.* (quoting *Konate v. Actalent, Inc.*, Civ. A. No. 23-4210, 2025 WL 289212, at *5 (D.N.J. Jan. 24, 2025)).)

In reply, Defendants argue Plaintiff failed to show a causal connection between her Kurdish ethnicity and the adverse employment decisions she alleges. (ECF No. l6 at 6–7.) Defendants contend the adverse employment decisions Plaintiff recites[5]—her changed responsibilities and Defendants' refusal to bring her back to work after her injury—are not sufficiently connected to Plaintiff's ethnicity. (*Id.* at 7.) Defendants also contest that Topbas's alleged remarks, without more, can provide the required nexus between an adverse employment decision and Plaintiff's ethnicity, characterizing them as "[s]tray remarks . . . by decisionmakers unrelated to the decision process" that do not lead to an inference of discrimination. (*Id.* (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992); citing *Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 361 (3d Cir. 2008)).) In response to Plaintiff's reference to the *McDonnell Douglas* standard as an evidentiary one, Defendants assert this qualification does not absolve Plaintiff of her pleading burden to "establish that her protected status was a factor in the employer's challenged action" and "to raise a reasonable expectation that discovery will uncover proof of her claims." (*Id.* at 8 (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 785 (3d Cir. 2016)).)

The NJLAD prohibits discrimination "on the basis of a litany of enumerated factors including, *inter alia*, race, creed, color, national origin, ancestry, age, sexual orientation, and gender identity." *See generally* N.J. Stat. Ann. §§ 10:5-1, *et seq.* Specifically, the NJLAD states:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (a) [f]or an employer, because of the race, creed, color, national origin, [etc.] . . . to refuse to hire or employ or to bar or to discharge or require to retire . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment; . . . [or] (q) [f]or any employer to impose upon a person as a condition of obtaining or retaining employment . . . any

---

[5] Defendants contest whether the alleged refusal to call 911 following Plaintiff's injury constitutes an adverse employment action because Plaintiff also alleges she was taken to the emergency room by a member of Marba's management team. (ECF No. 16 at 7.)

> terms or conditions that would require a person to violate or forego a sincerely held religious practice or religious observance, . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's religious observance or practice without undue hardship on the conduct of the employer's business.

N.J. Stat. Ann. §§ 10:5-12(a), (q)(1). Courts employ the same framework and standard of review when analyzing claims brought under the NJLAD as they do for analyzing claims brought under Title VII, also known as the *McDonnell Douglas* framework. *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) ("All retaliation and discrimination claims brought under Title VII and the NJLAD, including those based on sex, race, and disability, which rely on circumstantial evidence, are controlled by the three-step burden-shifting framework set forth in *McDonnell Douglas*[, 411 U.S. at 802–03]."); *Andersen*, 446 A.2d at 490–91.[6] "[T]he first step in that analysis requires plaintiff to demonstrate that he or she can meet each of the elements of the prima facie case." *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010). The elements of that *prima facie* case vary based on the cause of action alleged. *Id.* (listing different *prima facie* elements for NJLAD causes of action for failure to hire, discriminatory discharge, retaliation, and hostile work environment). "If the plaintiff successfully meets the requirements of a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions." *Tourtellotte*, 636 F. App'x at 842. If the employer supplies a legitimate

---

[6] The NJLAD has parallel provisions to Title VII for discrimination, retaliation, and failure to accommodate. *Aliano v. Twp. of Maplewood*, Civ. A. No. 22-05598, 2023 WL 4398493, at *4 (D.N.J. July 7, 2023) (citing N.J. Stat. Ann. § 10:5-12(a), (q), (r)); *see also McKinley v. Princeton Univ.*, Civ. A. No. 22-05069, 2023 WL 3168026, at *2 (D.N.J. Apr. 28, 2023) ("Because the analyses for Title VII and NJLAD claims are the same, the Court will analyze the claims together[.]" (citations omitted))). Accordingly, courts assess claims brought pursuant to the NJLAD in the same way they assess claims brought under Title VII. *Id.* (citations omitted); *Saqa v. Factory Mut. Ins. Co.*, Civ. A. No. 23-03994, 2024 WL 939689, at *3 n.2 (D.N.J. Mar. 5, 2024) (same). Therefore, even though Plaintiff does not allege any Title VII claims, the Court analyzes Plaintiff's NJLAD claims in the same way it would assess similar claims brought under Title VII, in accordance with Third Circuit precedent.

nondiscriminatory reason, "the burden then shifts back to the plaintiff to prove that the . . . explanation is merely a pretext for the discrimination or retaliation." *Id.*

A plaintiff establishes a *prima facie* case for discrimination based on race, ethnicity, or national original by alleging: "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Id.*; *see also Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020) (affirming dismissal of NJLAD claims based on race, religion, and creed because plaintiff failed to demonstrate employer's nondiscriminatory reason for termination was pretextual); *Shahin v. Delaware*, 543 F. App'x 132, 135–36 (3d Cir. 2013) (applying this framework to plaintiff's allegations of discrimination on basis of national origin to find no *prima facie* case). This burden is "rather modest, . . . but it remains the plaintiff's burden nonetheless." *Victor*, 4 A.3d at 141 (quoting *Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133, 1139 (N.J. 2005)). A *prima facie* case serves "to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination *could* be a reason for the employer's action." *Marzano v. Comput. Sci. Corp. Inc.*, 91 F.3d 497, 508 (3d Cir. 1996).

An adverse employment action is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Tourtellotte*, 636 F. App'x at 842 (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)); *see also Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997) (determining unfounded "oral reprimands" and "derogatory comments" did not constitute "adverse employment action" and citing cases finding restricting use of office, lateral transfer, and "the silent treatment" were not adverse actions). A plaintiff may use "any kind of evidence" to demonstrate circumstances giving rise to an inference

of discrimination, "including comparator evidence, evidence of similar racial discrimination against other employees, or direct evidence of discrimination from statements or actions by [the plaintiff's] supervisors suggesting racial animus." *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 540 (D.N.J. 2022) (alterations in original) (internal quotations omitted); *see also Worthy v. Unilever U.S., Inc.*, Civ. A. No. 2:23-17570, 2024 WL 3326039, at *9 (D.N.J. July 8, 2024) (finding plaintiff failed to state NJLAD claim because he "conclusorily allege[d] Defendant's decision to terminate his employment was motivated, in whole or in part, by his race/ethnicity" and hired white man to replace him); *Hong Zhuang v. EMD Performance Materials Corp.*, Civ. A. No. 18-1432, 2018 WL 3814282, at *10 (D.N.J. Aug. 10, 2018) (dismissing race-based NJLAD claim because, as alleged, "instances where [plaintiff] was treated differently because of her race" were not "related to her termination"); *accord Arenas v. L'Oreal USA Prods., Inc.*, 790 F. Supp. 2d 230, 237 (D.N.J. 2011) (finding plaintiff established *prima facie* age discrimination case where her termination for poor performance following her refusal to accept a voluntary early retirement program "present[ed] a logical basis on which to find [defendant's] decision to terminate her employment was affected by her age," but granting summary judgment for employer because plaintiff could not rebut nondiscriminatory rationale), *aff'd*, 461 F. App'x 131 (3d Cir. 2012).

A plaintiff may also point to "circumstances [that] give rise to an inference of discrimination," *Warfield v. SEPTA*, 460 F. App'x 127, 130 (3d Cir. 2012), including derogatory comments and jokes, supervisors' failure to respond appropriately to complaints about discrimination or harassment, and other indicia an employer's stated rationale for the adverse action is specious, *see, e.g.*, *Rhodes v. Northumberland Cnty.*, Civ. A. No. 4:23-01807, 2024 WL 3258208, at *5–6 (M.D. Pa. July 1, 2024) (denying motion to dismiss race- and gender-based claims because plaintiff alleged "deportation threats from supervisors," pay and discipline

disparities with white peers, toleration of "sexist and racist jokes" by management, and exclusion from duties she was hired to perform, thereby "establish[ing] a link between her race and gender and the abuse she suffered to her termination"); *Williams v. Century Sec. Servs., Inc.*, Civ. A. No. 24-00385, 2025 WL 84142, at *5 (M.D. Pa. Jan. 13, 2025) (finding plaintiff made *prima facie* race discrimination case where he alleged his criminal history was not raised during eight months he was employed before termination and employer promised to "say nothing" about criminal record if he stayed silent about race-based harassment by fellow employee). Proximity in time between these circumstances and the adverse employment action also supports an inference of discrimination. *See, e.g.*, *Rhodes*, 2024 WL 3258208 at *5 (noting "a close proximity between the bulk of [plaintiff's] complaints and the date of her termination" in denying motion to dismiss).

Plaintiff alleges she is Kurdish and otherwise qualified for the roles she held at Marba since September 2022, which Defendants do not contest. (ECF No. 1 ¶¶ 39, 79.) However, Defendants contend Plaintiff has not identified an adverse employment action nor tied any such event to facts giving rise to an inference of discrimination. (ECF No. 13-1 at 9–11.)

Plaintiff alleges she was reassigned from her normal role in bread production to the onion cutting machine and, following her injury, she was given no work assignment whatsoever and was consequently not paid. (ECF No. 1 ¶¶ 81–83, 87–89.) While it is possible reassignment to another role could, in some cases, constitute an adverse employment action (for examples, if the role was lower paid or involved significantly less-desirable duties), Plaintiff alleges only that she was assigned to clean the onion cutting machine with no tangible changes to her "compensation, terms, conditions, or privileges of employment." *Tourtellotte*, 636 F. App'x at 842; *Robinson*, 120 F.3d at 1301. As such, the reassignment is not an adverse employment action. *See id.* Conversely, Plaintiff alleges that, after her injury, she was not given any work assignment and collected no

wages. (ECF No. 1 ¶¶ 87–89.) Taken as true, Plaintiff alleges a "serious and tangible" alteration to her employment conditions, satisfying the "adverse employment action" element of a *prima facie* claim. *Tourellotte*, 636 F. App'x at 842.

However, as pled, Plaintiff has not alleged facts giving rise to the inference Defendants denied her work assignments due to her ethnicity. While Plaintiff describes heated debates with Topbas over Kurdish rights and politics, she provides no timeframe for these discussions relative to her injury and subsequent denial of work, other than to state Topbas was hired in July of 2023 and her injury occurred July 25, 2024. (ECF No. 1 ¶¶ 77–78, 87–89.) Plaintiff did not report these incidents to Defendants but claims it was "known" Topbas was "targeting Plaintiff due to her ethnicity," and Defendants did nothing to intervene or investigate. (*Id.* ¶¶ 79–80.) Yet she provides no support for these conclusions, such as interactions where Can acknowledged the tension between Plaintiff and Topbas or evidence of awareness among other Marba employees that Topbas was harassing her. Similarly, Plaintiff's allegations that Topbas reassigned her to the onion cutting machine due to animus are rooted solely in Plaintiff's conjectures about Topbas's motivation. (*Id.* ¶ 83 ("It was obvious that Ms. Topbas was harassing and discriminating the Plaintiff based on her ethnicity[.]").) Although Plaintiff alleges Topbas was aware Plaintiff had not finished her work and other employees were available to do that job, she does not allege the other employees were not Kurdish and were not asked to take on tasks outside their normal roles as would constitute comparator evidence. *See Starbucks*, 624 F. Supp. 3d at 540. And Plaintiff's discussion of Defendants' failure to provide her work assignments is devoid of any connection to her ethnicity. (ECF No. 1 ¶¶ 87–89.)

In all, Plaintiff makes merely conclusory allegations that cannot support an inference of discrimination. *See, e.g.*, *Worthy*, 2024 WL 3326039 at *10; *Shahin*, 543 F. App'x at 136.

Accordingly, she has not made a *prima facie* case for her NJLAD ethnicity discrimination claims, and they are dismissed. *See Victor*, 4 A.3d at 141; *Tourtellotte*, 636 F. App'x at 842.

## 2. Disability Discrimination

Defendants argue Plaintiff's disability discrimination claim also fails because she has not alleged "what accommodation she requested, when she requested it, or to whom the request was made." (ECF No. 13-1 at 11.) Without the details of her "clear and specific request for accommodation" and allegations about Defendants' response, they contend Plaintiff cannot state a claim. (*Id.* at 11–12.) Again, Defendants make additional arguments based on the Employee Declaration as to why Plaintiff was not assigned work following her injury, which the Court does not consider. (*Id.* at 12.)

Plaintiff contends her disability discrimination claim must go forward because she has established the *prima facie* elements. (ECF No. 15 at 11.) Specifically, Plaintiff asserts she alleged that she was qualified to perform her dough-making role prior to her injury on the onion cutting machine, but after she was cleared to return to work, "Defendants have refused and failed to provide her with any form of reasonable accommodation or any work, and did not engage her in an interactive process to determine what reasonable accommodation she needs," as she argues they were required to do.[7] (*Id.* at 11–12 (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999)).) In reply, Defendants reiterate their view that Plaintiff has failed to allege essential details about her request for accommodation to make her claim plausible or to allege her disability was a "motivating factor" of an adverse employment action. (ECF No. 16 at 9.)

---

[7] Plaintiff also argues "[a]ny reason submitted by Defendants" explaining why they did not assign her work is an "unsubstantiated allegation[]" that is inappropriate on a motion to dismiss. (ECF No. 15 at 12.) As discussed *supra*, the Court agrees and has not considered the proffered rationales.

The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J. Stat. Ann. § 10:5-4.1; *Victor v. State*, 952 A.2d 493, 501 (N.J. App. Div. 2008), *aff'd as modified*, 4 A.3d 126 (N.J. 2010). To establish a *prima facie* case of disability discrimination under the NJLAD, a plaintiff must demonstrate:

> (1) plaintiff was handicapped or disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) plaintiff suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position.

*Victor*, 952 A.2d at 501.

Courts have "uniformly held that the [NJLAD] . . . requires an employer to reasonably accommodate an employee's handicap." *Tynan v. Vicinage 13 of Superior Court*, 798 A.2d 648, 654 (N.J. App. Div. 2002). "The failure to accommodate is one of two distinct categories of disability discrimination claims[.]" *Tynan*, 798 A.2d at 655. The requirements for a failure to accommodate claim under the NJLAD have been interpreted in accordance with its federal counterpart, the Americans with Disabilities Act ("ADA"). *Id.*; *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 n.12 (3d Cir. 2006). To establish a *prima facie* case of failure to accommodate, a plaintiff must first show the *prima facie* elements of disability discrimination. *See Taylor*, 184 F.3d at 306, 317–320 (laying out *prima facie* elements of disability discrimination and determining if plaintiff met ADA disability definition before analyzing reasonable accommodation); *Linton v. L'Oreal USA*, Civ. A. No. 06-5080, 2009 WL 838766, at *3 (D.N.J. Mar. 27, 2009); *Tynan*, 798 A.2d at 657. If the *prima facie* elements are met, the plaintiff must

also establish her employer "failed to participate in the interactive process" of accommodating her disability by establishing four elements:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Tourtellotte*, 636 F. App'x at 849 (quoting *Victor*, 4 A.3d at 145).

An employer "must reasonably accommodate an employee's disability . . . and the related limitations of an employee, 'unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business.'" *Hennessey v. Winslow Twp.*, 847 A.2d 1, 6 (N.J. App. Div. 2004) (quoting *Tynan*, 798 A.2d at 654), *aff'd*, 875 A.2d 240 (N.J. 2005); *see also* N.J. Admin. Code 13:13–2.5(b). "While there are no magic words to seek an accommodation, the employee, however, 'must make clear that . . . assistance [is desired] for his or her disability.'" *McQuillan v. Petco Animal Supplies Stores, Inc.*, Civ. A. No. 13-5773, 2014 WL 1669962, at *6 (D.N.J. Apr. 28, 2014) (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000) (alterations in original)); *see also Concepcion v. Silver Line Bldg. Prods.*, Civ. A. No. 21-17920, 2022 WL 1748064, at *4 (D.N.J. May 31, 2022) (dismissing failure to accommodate claim because complaint "is void of facts concerning when and how she requested [accommodation], what the requested accommodation was, and how [employer] responded"); *Syder v. Express Servs., Inc.* ("*Syder I*"), Civ. A. No. 20-11013, 2021 WL 3674345, at *5 (D.N.J. Aug. 18, 2021) (finding failure to accommodate claim inadequately pled because allegation that plaintiff "requested a reasonable accommodation of his disability" merely stated "the legal conclusion that he requested a reasonable accommodation instead of stating factually what occurred"). That said, there is no

requirement the plaintiff make a written request or even use the phrase "reasonable accommodation." *McQuillan*, 2014 WL 1669962 at *6.

As with claims of ethnicity discrimination, New Jersey courts use the *McDonnell Douglas* framework for disability claims. *See, e.g.*, *Victor*, 4 A.3d at 140–41; *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (2002) (recognizing New Jersey "courts have adopted the burden-shifting framework articulated in *McDonnell Douglas* . . . to prove disparate treatment under [NJ]LAD").

Other than with a single line in their Reply questioning the nexus between her disability and her adverse employment action, Defendants do not appear to challenge Plaintiff alleged a *prima facie* claim of disability discrimination. (ECF No. 16 at 9.) The Court therefore assumes, without deciding, Plaintiff has adequately alleged her finger injury rendered her disabled under NJLAD,[8] she was otherwise qualified for her position as a dough maker, and, as discussed *supra*, Defendants' refusal to give her a work assignment after she recovered was an adverse employment action. The Complaint alleges only that Defendants did not give Plaintiff a work assignment because of her disability, stating they "refused and failed to provide her with any form of reasonable accommodation" and falsely claimed "there is no work for her at the company," sending her home instead. (ECF No. 1 ¶¶ 87–89.) However, these interactions allegedly occurred when Plaintiff sought to return to work after recovering from the injury she sustained on the job, and Plaintiff alleges she was told "there is no work *for her* at the company." (*Id.* ¶ 89 (emphasis added).) In this context, Plaintiff's allegations may be sufficient for a *prima facie* discrimination claim. *See, e.g.*, *Syder v. Express Servs., Inc.* ("*Syder II*"), Civ. A. No. 20-11013, 2022 WL 577964,

---

[8] The Third Circuit has observed that "[t]he NJLAD defines disability in a broader sense than does federal law." *Tourtellotte*, 636 F. App'x at 848 n.30 (citing *Victor*, 4 A.3d at 142 n.11).

at *3 (D.N.J. Feb. 24, 2022) (finding plaintiff pled *prima facie* case where "[o]nly a few days passed [between plaintiff's] injury and his termination, and no other explanation appears").

Nonetheless, the Complaint does not supply the necessary facts to allege a failure to reasonably accommodate Plaintiff's disability because it provides no detail about the nature and circumstances of her request and Defendants' response, as required by the second through fourth elements. *See Syder I*, 2021 WL 3674345 at *5; *Concepion*, 2022 WL 1748064 at *4. The whole of Plaintiff's allegations are that "Defendants have refused and failed to provide her with any form of reasonable accommodation[.]" (ECF No. 1 ¶ 87.) Plaintiff merely states "the legal conclusion that [she] requested a reasonable accommodation instead of stating factually what occurred," which is insufficient. *Syder I*, 2021 WL 3674345 at *5; *accord Minegar v. Amazon.com Servs. Inc.*, Civ. A. No. 22-02162, 2023 WL 8019430, at *5 (D.N.J. Nov. 20, 2023) ("[C]ourts typically require plaintiffs to plead what accommodations the plaintiffs are seeking, and what specific accommodations or positions are available."). The Court does not accept this "legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Therefore, Plaintiff's reasonable accommodation claim is dismissed.

### 3. Hostile Work Environment Claim

Plaintiff's final discrimination-related claim is for hostile work environment, and Defendants also contend she fails to plead the elements. (ECF No. 13-1 at 12–13.) Specifically, Defendants contend Plaintiff's allegations are devoid of instances of "intentional discrimination based on a protected characteristic" as required for a hostile work environment claim under NJLAD. (*Id.* (citing *Huston v. Proctor & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009); *Trevizo v. Del Torro*, Civ. A. No. 1:23-00508 2025 U.S. Dist. LEXIS 9799, at *13–14 (M.D. Pa. Jan. 21, 2025)).)

In opposition, Plaintiff asserts she sufficiently alleged she suffered "severe or pervasive" "intentional discrimination based on her ethnicity and disability" to establish a *prima facie* case. (ECF No. 15 at 12–13.) Plaintiff cites "being yelled at [publicly by her supervisor], not paid 1040 hours of overtime, severely and permanently injuring her finger, and removed from her position" as instances of this intentional and pervasive discrimination. (*Id.* at 13.) Plaintiff also contends Defendants are liable for these acts because they were conducted by Topbas, her direct supervisor, Can was aware of Topbas's actions but "failed to interfere and remedy them," and Can "is personally named in this action." (*Id.*)

Defendants respond that Plaintiff's allegations are conclusory "as to the Defendants' subjective intents" and fail to connect the allegedly discriminatory conduct to "Plaintiff's membership in any protected class." (ECF No. 16 at 10.) Defendants also argue Plaintiff does not allege "sufficient facts regarding the nature and extent of a hostile work environment," contending the pleading must describe extreme conduct "amount[ing] to a change in the terms and conditions of employment." (*Id.* (quoting *Trevizo*, 2025 U.S. Dist. LEXIS 9799 at *15–16).)

To state a *prima facie* hostile work environment claim under the NJLAD, a plaintiff must show the complained of conduct: "(1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." *Shepherd v. Hunterdon Dev. Ctr.*, 803 A.2d 611, 625 (N.J. 1993) (citing *Lehmann v. Toys R Us., Inc.*, 626 A.2d 445, 453 (N.J. 1993)). "A viable hostile environment claim stems from extremely insensitive conduct against the protected person so egregious that it alters the conditions of employment and destroys the person's equal opportunity in the workplace." *Jackson v. Gannett Co.*, Civ. A. No. 08-6403, 2011 WL 3362154, at *5 (D.N.J. Aug. 3, 2011).

The first element establishes a but-for test: "a plaintiff must show . . . she suffered discrimination because of her [protected status]." *Lehmann*, 626 A.2d at 454; *see also Cutler v. Dorn*, 955 A.2d 917, 924 (N.J. 2008). "Common sense dictates that there is no [NJ]LAD violation if the same conduct would have occurred regardless of the plaintiff's [protected status]. For example, if a supervisor is equally crude and vulgar to all employees, regardless of their [protected status], no basis exists for a [hostile work environment claim]." *Lehmann*, 626 A.2d at 454. However, NJLAD "is not a fault- or intent-based statute," and proof of intent is not required to allege but-for causation. *Id.*

The "severe or pervasive" element of an NJLAD hostile work environment claim "conforms to the standard for establishing workplace racial or gender harassment under federal Title VII law." *Taylor v. Metzger*, 706 A.2d 685, 689 (N.J. 1998). "Courts must consider the frequency or severity of the conduct, whether the conduct was physically threatening or humiliating, or merely an offensive utterance and whether the conduct unreasonably interfered with plaintiff's work performance." *Jackson*, 2011 WL 3362154 at *5; *see Godfrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1045 (N.J. 2008). This is an objective standard. *See Rios v. Meda Pharm.*, Inc., 252 A.3d 982, 988 (N.J. 2021) (finding severity of "offensive comments directed to a Hispanic employee" must be assessed "from the perspective of a reasonable Hispanic person in the plaintiff's position"). The perspective of a "reasonable person" in the plaintiff's position is intended to "reflect evolving community standards" of behavior. *Cutler*, 944 A.2d at 924. The focus must be on the harassing conduct itself, "not its effect on the plaintiff or the work environment; that is because neither a plaintiff's subjective response to the harassment nor a defendant's subjective intent when perpetrating the harassment is controlling of whether an actionable hostile environment claim exists." *Id.* (internal citations omitted). In other words, "not

everything that makes an employee unhappy" forms the basis for an actionable claim. *Robinson*, 120 F.3d at 1300 (citations omitted).

Here, Plaintiff alleges[9] she was "repeatedly question[ed]" by Topbas about her views on the Kurdish people's rights, Topbas became "visibly angry" at her responses because they had different opinions, Can refused to call 911 when Plaintiff was injured by the onion cutting machine (but another Marba employee drove her to the hospital), and Defendants sent her home upon her return because they claimed there was no work for her. (ECF No. 1 ¶¶ 77–80; 84–85; 87–89.) As alleged, Plaintiff's confrontational discussions with Topbas about "her beliefs and support of the Kurds" appear to be because of her Kurdish ethnicity. (*Id.* ¶¶ 77–80.) *See Cutler*, 955 A.2d at 925–26 (finding comments "stereotyp[ing] persons of Jewish ancestry" said to plaintiff or in his presence "was conduct that occurred because of [plaintiff's] particular ancestry and religion. . . . Those statements . . . were aimed to have an effect on their listener, and their listener was known to the speakers as a person of Jewish faith and ancestry"). As discussed *supra*, Plaintiff also plausibly pled Defendants' refusal to assign her work after her injury was because of her disability. However, no allegations connect Defendant's reluctance to call an ambulance for Plaintiff to her ethnicity, and Plaintiff does not allege Defendants knew, at the moment of her injury, that she would become disabled. (ECF No. 1 ¶¶ 84–85.)

The question then becomes whether Defendants' conduct, in the form of Topbas's heated discussions with Plaintiff over Kurdish rights and Defendants' failure to assign her work post-

---

[9] While in her Opposition Plaintiff attempts to characterize her lack of overtime pay as evidence of harassment due to a protected characteristic, she also seeks to represent the Collective and the Class based on Defendants' alleged policies and practices of not paying overtime wages. (ECF No. 1 ¶¶ 27–38.) The nature of such groupwide allegations belies the idea that Defendants' withholding of overtime compensation had anything to do with her ethnicity or disability, so the Court examines only those allegations relating solely to Plaintiff. *See Lehmann*, 626 A.2d at 454.

injury, would be severe or pervasive from the perspective of a disabled Kurdish person. *See Rios*, 252 A.3d at 988; *Cutler*, 944 A.2d at 924. The Court finds the repeated questions by and reactions from Topbas about Plaintiff's feelings about Kurdish rights and politics do not meet that standard. Plaintiff describes being "repeatedly question[ed]" by Topbas, who was "visibly anger[ed]" by her response that she "supports freedom and the Kurdish ethnicity," but she does not describe the tenor of these conversations or the words used. (ECF No. 1 ¶¶ 77–78.) As pled, Plaintiff describes what could reasonably be interpreted as a heated political debate among coworkers, albeit one closely connected to Plaintiff's ethnicity. While political discussions among individuals with opposing views can generate "unpleasantries and general feelings of tension," they do not "rise to the level of severe or pervasive conduct that would have altered Plaintiff's employment conditions necessary to sustain a hostile work environment claim." *Jackson*, 2011 WL 3362154 at *7 (granting summary judgment because instances where plaintiff did not get desired assignments, received more assignments than he felt he could finish, and received negative feedback about work were not connected to disability and were neither severe nor pervasive). Even if these exchanges took on a derogatory undertone or involved ethnic epithets (which Plaintiff does not allege), such "mere utterance[s]" alone have been found not to "sufficiently affect the conditions of employment to implicate" a hostile work environment claim. *Perry v. Harvey*, 332 F. App'x 728, 732 (3d Cir. 2009) (quoting *Harris v. Forkliff Sys. Inc.*, 510 U.S. 17, 21 (1993)) (finding five instances of allegedly hostile behavior over ten months, including one where racial epithet was used, "insufficient as a matter of law . . . to conclude" plaintiff experienced hostile work environment).

But viewed as a disabled person, Defendants' refusal to assign work to Plaintiff after she recovered from her injury for several weeks (ECF No. 1 ¶¶ 87–89), if true, could be severe enough to substantiate a hostile work environment claim. *See, e.g.*, *Arku-Nyadia v. Legal Sea Foods, LLC*,

Civ. A. No. 18-1089, 2020 WL 6111001, at *8 (D.N.J. Oct. 16, 2020) (denying summary judgment because trier of fact could find employers' misapplication of managerial authority "to remove [plaintiff] from favorable shifts and tables, [and] send her home early," among other things, constituted hostile work environment). By summarily denying her shifts (and, therefore, wages) in the wake of her accident, a reasonable person in Plaintiff's shoes would find the conditions of her employment significantly altered. *See id.* Though her allegations are somewhat sparse, they are sufficient to survive at this stage.[10]

### B.  Retaliation Claims

Defendants globally attack Plaintiff's retaliation-based claims as deficient because "the Complaint does not identify any protected activity Plaintiff engaged in that allegedly led to the adverse employment action." (ECF No. 13-1 at 7.) Defendants contend the filing of this suit cannot be the alleged protected activity "because Plaintiff filed this instant lawsuit after the alleged adverse employment action." (*Id.*) Even if Plaintiff contends threatening to file this matter was the protected activity, Defendants argue the Complaint does not contain sufficient facts to connect it to any purported retaliation. (*Id.*) Defendants also assert "Plaintiff's CEPA claim is independently barred" because an employee cannot "simultaneously pursu[e] claims under both CEPA and NJLAD when they arise from the same set of facts." (*Id.* at 8–9 (citing N.J. Stat. Ann. 34:19-8; *Young v. Schering Corp.*, 660 A.2d 1153, 1158 (N.J. 1995); *J.S. v. Borough of Englewood Cliffs*, No. A-5938-12T1, 2015 N.J. Super. Unpub. LEXIS 1151, at *10 (N.J. App. Div. May 18, 2015).)

---

[10] The Court recognizes Defendants' Employee Declaration purports to provide a neutral explanation as to why Plaintiff was denied shifts. (ECF No. 13-2.) But the Court cannot consider any "[f]actual claims and assertions raised by a defendant," *Doe*, 30 F.4th at 345, and Plaintiff is entitled to test the veracity of this claim through discovery. It may be that what appears in Plaintiff's Complaint to be an action related to her disability becomes one clearly driven by other, unrelated factors, but this is not a question the Court may address on a motion to dismiss.

In response, Plaintiff argues each of her retaliation claims is adequately pled under the appropriate federal and state statutory regimes.[11] (ECF No. 15 at 4–8.) Highlighting that courts have found even "informal complaints are protected activity under the FLSA," Plaintiff contends her informal complaints to Defendants about the lack of overtime pay are protected under the FLSA and NJWHL, and Defendants "took adverse employment actions against her by refusing to pay her overtime while continuing to demand overtime hours from her [and] refus[ing] to call her back to work." (*Id.* at 5–6 (citing *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015); *Kasten v. Saint-Gobain Performance Plastics Corp.* 563 U.S. 1 (2011); *Shakib v. Back Bay Rest. Grp., Inc.*, Civ. A. No. 10-4564 2011 U.S. Dist. LEXIS 112614, *22 (D.N.J. Sept. 30, 2011)).) As a result, Plaintiff argues she established the requisite causal connection "between Plaintiff's activities and the adverse actions taken against her." (*Id.* at 6.) Plaintiff also argues her CEPA claim is premised on a distinct set of facts from her NJLAD discrimination and retaliation claims, specifically "her disclosing or threatening to disclose" Defendants' failure to pay overtime wages, and therefore her CEPA claim is not barred as Defendants contend. (*Id.* at 7–8.)

In response, Defendants argue not being paid overtime and complaining about the lack of overtime pay are not protected activities. (ECF No. 16 at 2–4.) Defendants contest Plaintiff's view that informal complaints are a protected activity under the relevant statutes because informal complaints do not provide "fair notice" to an employer that it could become subject to a retaliation

---

[11] Plaintiff premises her NJLAD retaliation claim entirely on the filing of the Complaint and Defendants' allegedly adverse actions toward her after the Complaint was filed. (ECF No. 15 at 6–7.) *See also Cardenas*, 269 F.3d 263 ("[T]o establish a prima facie retaliation claim under [NJLAD], [a plaintiff] must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action."). As Plaintiff admits the gravamen of this cause of action is entirely "extraneous to the pleadings," it must be dismissed. *In re Burlington*, 114 F.3d at 1426. The Court will grant Plaintiff leave to amend this claim to include facts surrounding her termination if she so chooses, as discussed *infra*.

claim. (*Id.* at 3 (quoting *Kasten*, 563 U.S. at 1).) Rather, Defendants contend a complaint must be made with "some degree of formality," to which Plaintiff's alleged complaint did not conform because she did not "follow[] any kind of intra-company complaint procedure," "elevate[] her concerns to upper levels," or otherwise "lodge[] a grievance." (*Id.* at 3–4 (quoting *Kasten*, 563 U.S. at 1).) Even if Plaintiff's actions are protected activities, Defendants argue Plaintiff fails to allege a causal connection between them and Defendants' failure to assign her work because she does not allege the circumstances of her request and Defendants' response, nor any past retaliation against Plaintiff or other employees or statements by Defendants that could lead to an inference of retaliation. (*Id.* at 4.) Additionally, Defendants assert Plaintiff does not allege she was the only employee "whose schedule had been reduced or whose labor had been refused." (*Id.* at 5.)

### 1. FLSA/NJWHL Retaliation

The FLSA makes it unlawful for an employer to discriminate against an employee who "filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter," 29 U.S.C. § 215(a)(3), *i.e.*, "concerning minimum wages, maximum hours, and overtime pay," *Kasten*, 563 U.S. at 4. "Similarly, the 'NJWHL also protects workers from retaliation for complaining' under N.J. Stat. Ann. 34:11–56a24." *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 850 n.3 (D.N.J. 2019) (quoting *Chen v. Domino's Pizza, Inc.*, Civ. A. No. 09-107, 2009 WL 3379946, at *3 (D.N.J. Oct. 16, 2009)).

Like claims of discrimination, claims for retaliation under the FLSA and NJWHL are evaluated using the *McDonnell Douglas* burden-shifting framework. *See Cononie v. Allegheny Gen. Hosp.*, 29 F. App'x 94, 95 (3d Cir. 2002); *Cohen*, 419 F. Supp. 3d at 850 (applying *McDonnell Douglas* framework to both statutes); *New Jersey v. Haig's Serv. Corp.*, Civ. A. No. 12-4797, 2016 WL 4472952, at *6 (D.N.J. Aug. 24, 2016) (applying *McDonnell Douglas*

framework to retaliation claims under several New Jersey wage-related statutes); *accord Stewart v. Pemberton Twp.*, Civ. A. No. 14-6810, 2020 WL 5040602, at *6 (D.N.J. Aug. 26, 2020) (noting *McDonnell Douglas* framework applies "[w]here there is no direct evidence of retaliation"). A plaintiff makes a *prima facie* claim for retaliation by showing: "(1) she engaged in protected activity; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to the protected activity." *Cohen*, 419 F. Supp. 3d at 850 (citing *Conoshenti v. Pub. Elec. & Gas Co.*, 364 F.3d 135, 146–47 (3d Cir. 2004)).

"Third Circuit and Supreme Court precedent . . . indicate a preference for a liberal interpretation of the word 'complaint' in the FLSA's anti-retaliation provision." *Childs v. Universal Cos.*, Civ. A. No. 15-3507, 2016 WL 1623159, at *4 (E.D. Pa. Apr. 22, 2016). "The breadth of the remedial purpose of the FLSA was confirmed in [*Kasten*], where the United States Supreme Court held that it was error to exclude an employee's oral complaints from the scope of FLSA protection for 'any complaint.'" *Rankin v. PTC All. LLC*, Civ. A. No. 21-1321, 2023 WL 6318162, at *6 (W.D. Pa. Sept. 28, 2023) (finding arguments about employer's understanding of complaint as "FLSA grievance" were inappropriate for resolution at summary judgment where plaintiff's complaints were "lodged in the days and weeks before" his termination); *see also Sondesky v. Cherry Scaffolding, Inc.*, Civ. A. No. 16-5667, 2017 WL 3873578, at *3 (E.D. Pa. Sept. 5, 2017) (denying motion to dismiss where plaintiff "demanded that she be compensated for all hours actually worked, including overtime" during phone call with employer); *Sally-Harriet v. N. Child. Servs.*, Civ. A. No. 17-4695, 2019 WL 1384275, at *8–9 (E.D. Pa. Mar. 26, 2019) (finding plaintiff who complained to employer's board of directors she was improperly classified as exempt from FLSA and not paid overtime adequately stated FLSA claim). But, whether written or oral, "a complaint must be sufficiently clear and detailed for a reasonable employer to

understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten*, 563 U.S. at 14; *see, e.g.*, *Robinson v. Pottstown Area Rapid Transit, Inc.*, Civ. A. No. 22-655, 2022 WL 4291333, at *7 (E.D. Pa. Sept. 16, 2022) (finding plaintiff's alleged complaint to employer was not protected activity because raising concern other employees would not fill shifts due to lower pay did not clearly assert FLSA right to overtime pay); *Rovetto v. Dublirer*, Civ. A. No. 20-2497, 2020 WL 7022667, at *6 (D.N.J. Nov. 30, 2020) (dismissing FLSA claim because "asking to clarify a company policy, standing alone, does not put a reasonable employer on notice that Plaintiffs seek to assert their rights under FLSA").

Here, Plaintiff alleges she "complained to Defendants and demanded payment of her overtime for each hour worked over forty (40) per week, [and] Defendants refused and responded that Defendants do not and will not pay overtime," without specifying to whom she voiced her grievance or placing it on the timeline of events the Complaint describes. (ECF No. 1 ¶ 55.) While the substance of Plaintiff's alleged complaint would be a protected activity under the FLSA and NJWHL, as Plaintiff alleges she expressed her desire to be compensated for her overtime hours as required by law, the Complaint lacks the information necessary to determine whether Defendants understood it, "in light of both content and context, as an assertion of rights protected by the statute." *Kasten*, 563 U.S. at 14. The Complaint does not tell the Court whether Plaintiff made this request to her supervisor (Topbas), Can, or some other Marba employee, and, therefore, who represented to Plaintiff that Defendants' policy was not to pay overtime. (ECF No. 1 ¶ 55.) As pled, Plaintiff's single sentence without any contextual details does not allege a protected activity above the "speculative level." *Twombly*, 550 U.S. at 555.

Even if the Court were to find Plaintiff's allegations sufficient to show she undertook a protected activity, the lack of detail surrounding her alleged complaint about the overtime policy

means she has not pled Defendants' decision to deny her shifts was "causally related to the protected activity." *Cohen*, 419 F. Supp. 3d at 850. Plaintiff worked in a non-exempt role for Defendants from September 2022 through at least the filing of the Complaint on October 15, 2024, and she alleges Defendants refused to give her any shifts throughout the month preceding when she filed the Complaint, starting September 16, 2024. (ECF No. 1 ¶¶ 39, 42, 87–89.) Without, at a minimum, a timeframe of when Plaintiff approached a representative of Defendants to demand her overtime pay, the Court cannot assess what relationship exists between this demand and Defendants' alleged refusal to assign her work.[12] *See Rankin*, 2023 WL 6318162 at *6. Because Plaintiff's allegations are insufficient to establish two of the three *prima facie* elements of a retaliation claim under the FLSA and NJWHL, these claims are dismissed.

### 2. CEPA Retaliation

A CEPA claim has four elements: "(1) that [the plaintiff] reasonably believed his employer's conduct violated a law or regulation; (2) that he performed 'whistle-blowing activity' as defined in CEPA; (3) that an adverse employment action has been taken against him; and (4) that the whistle-blowing activity caused such adverse employment action." *Curro v. HD Supply, Inc.*, Civ. A. No. 19-19198, 2020 WL 3496955, at *5 (D.N.J. June 29, 2020). CEPA claims are also governed by the *McDonnell Douglas* framework and require a similar showing to an FLSA retaliation claim. *See Haig's*, 2016 WL 4472952 at *11 (citing *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999)).

---

[12] As discussed *supra* Section III.A.3, Plaintiff's hostile work environment claim does not suffer from the same deficiency because the Complaint alleges Defendants "refused and failed to provide her with . . . any work" "upon Plaintiff's return to work *following her injury*," starting on the date of "Plaintiff's scheduled return . . . September 16, 2024." (ECF No. 1 ¶¶ 87–88 (emphasis added).) By alleging she attempted to return to work, now disabled, and Defendants immediately refused to schedule her, Plaintiff provides timing and context that indicate a causal relationship that is lacking in the FLSA and NJWHL retaliation allegations.

Contrary to Defendants' assertion, courts typically read the waiver provision of CEPA, N.J. Stat. Ann. § 34:19-8,[13] to mean "retaliation claims brought under the [NJLAD] *can be precluded by CEPA claims* in the same Complaint," not the other way around. *Id.* at *4 (emphasis added) (citing *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 465–66 (D.N.J. 2009); *Figueroa v. City of Camden*, 580 F. Supp. 2d 390 (D.N.J. 2008)); *see also Young*, 660 A.2d at 1160 ("We hold that the waiver exception means . . . that once a CEPA claim is 'instituted,' . . . [p]arallel claims based on those rights, privileges and remedies are waived because they represent multiple or duplicative claims based on retaliatory discharge."). Because, as discussed *supra*, Plaintiff's NJLAD retaliation claim has been dismissed on other grounds, this is a moot issue.

Under CEPA, protected "whistle-blowing activity" includes "objecting to, or refusing to participate in, employer activities that the employee reasonably believes is in violation of a law, rule, regulation or a clear mandate of public policy," *Beltran v. 2 Deer Park Drive Operations LLC*, Civ. A. No. 20-8454, 2021 WL 794745, at *4 (D.N.J. Feb. 28, 2021) (citing *Stapleton v. DSW, Inc.*, 931 F. Supp. 2d 635, 638 (D.N.J. 2013)), as well as "disclos[ing] or threaten[ing] to disclose to a supervisor or to a public body an activity, policy or practice of the employer" she believes is unlawful, *Goode v. Camden City Sch. Dist.*, Civ. A. No. 16-03936, 2019 WL 6243156, at *14 (D.N.J. Nov. 22, 2019) (quoting N.J. Stat. Ann. § 34:19-3(a) (alterations in original)), *aff'd*, No. 22-3044, 2024 WL 107887 (3d Cir. Jan. 10, 2024).

The last element, causation, can be demonstrated by "temporal proximity between the protected activity and the adverse employment action, . . . a pattern of antagonism following the

---

[13] "Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee . . . except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other . . . State law, rule or regulation . . . ." N.J. Stat. Ann. § 34:19-8.

protected conduct," or based on the totality of the circumstances. *Haig's*, 2016 WL 4472952 at *10 (denying summary judgment for employer on CEPA claim because changes to employees' "hours and conditions" of employment occurred "shortly after" protected activity, employer referenced employee's lawsuit in relation to changes, and "continued nature of these actions" created causal link); *Cohen*, 419 F. Supp. 3d at 856–57 (finding fact plaintiff was terminated less than three months after objecting to employer policy and evidence of unfair discipline against her constituted "sufficient evidence of causation" to survive summary judgment); *Ho-Ho-Kus, Inc., v. Sucharski et al.*, Civ. A. No. 2:23-01677, 2025 WL 2416937, at *9 (D.N.J. Aug. 21, 2025) (finding counterclaimant adequately pled CEPA claim where allegations showed "[he] was not alone in voicing concerns and engaging in whistleblowing activity, but that he alone was met with termination"). Generally, the burden to make a *prima facie* CEPA case "is relatively easy to meet," but a "[p]laintiff cannot satisfy the fourth prong (causal connection) simply by satisfying the second and third prongs (whistle-blowing activity and adverse employment action) and then stating in a conclusory fashion that the termination was in retaliation for the whistle-blowing activity." *Griffin v. Metromedia Energy, Inc.*, Civ. A. No. 10-3739, 2011 WL 12872504, at *3–4 (D.N.J. Feb. 7, 2011) (finding no viable CEPA claim where complaint "states that Plaintiff was terminated 'in retaliation for said objections, opposition and refusal,' but provides no additional details to support that conclusion" (internal citation omitted)).

As with her FLSA and NJWHL claims, Plaintiff's CEPA claim lacks adequate allegations of causation because her alleged whistle-blowing activity in raising the issue of overtime pay to Defendants is wholly disconnected from the allegations regarding Defendants' refusal to assign her work. (ECF No. 1 ¶¶ 39, 42, 87–89.) Plaintiff effectively asks the Court to conclude a causal connection exists simply from her allegations of whistle-blowing activity and an adverse

employment action, which the Court cannot do. *See Griffin*, 2011 WL 12872504 at *4. Accordingly, Plaintiff's CEPA claim is also dismissed.

## IV.    LEAVE TO AMEND

As the Court has referenced throughout this Opinion, Plaintiff's Opposition indicated that, since instituting this litigation, she was terminated as an employee of Marba. (ECF No. 15 at 3.) Plaintiff attempted to incorporate these facts through a declaration, which, as discussed *supra*, the Court has not considered giving the procedural posture, but she also indicated she would file an amended complaint detailing these events "[s]hould the Court require." (*Id.*) Given the Court has now dismissed all but one of Plaintiff's claims that were the subjects of this Motion, the Court is inclined to read this as a request to amend the pleadings. Defendants have not indicated they oppose amendment and have highlighted that Plaintiff's references to her termination are outside the Complaint as it currently stands. (ECF No. 16 at 3, 5.)

Pursuant to Federal Rule of Civil Procedure 15(a), a "party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id.* "The grant or denial of leave to amend is a matter committed to the sound discretion of the district court." *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). The Third Circuit has adopted a liberal approach under Rule 15 to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (internal citations omitted). Leave to amend a pleading may be denied where the court finds: (1) undue delay; (2) undue prejudice to the non-moving party; (3) bad faith or dilatory motive; or (4) futility of amendment. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment

33

would be inequitable or futile." *Phillips*, 515 F.3d at 236 (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). "Leave to amend is futile when it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint which would entitle him to relief." *In re MicroBilt Corp.*, Civ. A. No. 13-4752, 2013 WL 6628619, at *3 (D.N.J. Dec. 16, 2013) (citing *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)).

In light of Plaintiff's post-filing termination, which may strengthen or provide new avenues for her discrimination or retaliation claims, as well as the reasons for dismissal enunciated in this Opinion, the Court does not find amendment of the claims would be futile. Plaintiff has not previously amended the Complaint, which also favors giving her the opportunity to cure any pleading deficiencies. *See, e.g.*, *Heartland Payment Sys., LLC v. Carr*, Civ. A. No. 3:18-09764, 2021 WL 302918, at *10 (D.N.J. Jan. 29, 2021).

## V.    CONCLUSION

For the reasons set forth above, and for good cause having been shown, Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 13) is **GRANTED IN PART** as to Causes of Action 5, 6, 7, 8, 9, 10, and 11 and **DENIED IN PART** as to Cause of Action 12. Plaintiff is **GRANTED** leave to amend her Complaint within 30 days of the date of this Opinion. An appropriate Order follows.


Dated:  September 3, 2025                    */s/ Brian R. Martinotti*
                                             **HON. BRIAN R. MARTINOTTI**
                                             **UNITED STATES DISTRICT JUDGE**