UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

BERNAN SUNBUL FIDAN,                                    Civil Action No.: 2:24-cv-09788

                Plaintiff,                                  **FIRST AMENDED**
                                                        **CLASS AND COLLECTIVE**
       -against-                                       **ACTION COMPLAINT**

MARBA PRODUCT, LLC and
AHMET CAN,
                                                        **Demand for Trial by Jury**
            Defendants.

_____

      Plaintiff, Bernan Sunbul Fidan ("Plaintiff" and/or "Mrs. Fidan"), by her attorneys the Law Offices of Rudy A. Dermesropian, LLC, makes the following allegations on behalf of herself and others similarly situated against defendants Marba Product, LLC (the "Company" or "Marba") and Ahmet Can ("Mr. Can") (collectively "Defendants"):

## NATURE OF THE CLAIMS

      1.    Plaintiff brings this action pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the laws of the state of New Jersey, to remedy Defendants' violations of the wage-and-hour provisions of the FLSA and New Jersey statutes that have deprived Plaintiff of her lawfully earned wages and benefits.

      2.    Defendants have been and are still trampling the federal and state interests in pursuit of their own profits, saving significant amounts in earned wages and benefits, implementation of policies, by failing to make, keep, and preserve accurate records, including but not limited to, hours worked each workday and total hours worked each workweek, as required by the FLSA and New Jersey statutes, and supporting federal and state regulations.

3.      This action further seeks to remedy Defendants' intentional creation of a hostile work environment, unlawful discrimination, harassment, retaliation and unlawful adverse actions towards Plaintiff based on her ethnic background, disability and failure to provide a reasonable accommodation in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1 to 10:5-49.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction with respect to Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1337.

5.      This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      This Court has supplemental jurisdiction over Plaintiff's claims under the N.J.S.A. § 34:11-56a, et seq., and N.J.S.A. § 34:11-4.1, et seq.

7.      Plaintiff's claims involve matters of national or interstate interest.

8.      Defendants are subject to personal jurisdiction in New Jersey because, among other things, maintains offices in New Jersey and the actions occurred in New Jersey.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in the District of New Jersey and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

11.     Plaintiff, an individual and resident of Wayne, New Jersey, is a current employee of Defendants.

12.     Plaintiff is a covered employee within the meaning of the FLSA and the laws of New Jersey.

13.     Plaintiff is an "employee" and a "person" within the meaning of the NJLAD.

14.     Defendant Company was and still is a New Jersey domestic for-profit limited liability company organized and operating under the laws of the state of New Jersey.

15.     Defendant Company was and still is authorized to conduct business in the State of New Jersey.

16.     Defendant Company is a covered employer that has engaged and continues to engage in interstate commerce within the meaning of the FLSA.

17.     Defendant Company was and still is located at and operating from 152 Getty Avenue, Clifton, New Jersey 07011.

18.     Defendant Company is an "employer" within the meaning of the NJLAD.

19.     At all relevant times herein, Defendant Company employed Plaintiff.

20.     Upon information and belief, Defendant Mr. Can was and still is a resident of the state of New Jersey.

21.     At all relevant times herein, Defendant Mr. Can was and still is the owner of Defendant Company.

22.     Defendant Mr. Can exercised control over the employment terms and conditions of Plaintiff and similarly situated individuals.

23.     Defendant Mr. Can had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff and the other similarly situated individuals.

24.     At all relevant times, Defendant Company has had gross sales and/or revenues in excess of $500,000.

25.     At all relevant times, the Company is and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the laws of New Jersey and the regulations thereunder.

26.     At all relevant times, the work performed by the Plaintiff was directly essential to the business operated by the Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt current and former employees employed by Defendants on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

28.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices and procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

29.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail for the last address known to Defendants.

30.    Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiff as well as the collective and class.

## **CLASS ACTION ALLEGATIONS**

31.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class period").

32.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rate of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. Rule 23.

33.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants; upon information and belief, there are in excess of twenty (20) Class Members.

34.    Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate action. All the Class members were subject to the same corporate

practices of Defendants, as alleged herein, of (i) failing to pay overtime compensation, (ii) failing to pay prevailing wages; (iii) failing to provide proper wage statements per requirements of the New Jersey State Wage and Hour Law, and (iv) failing to provide proper wage and hour notices, at date of hiring and annually, per requirements of the New Jersey State Wage and Hour Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

35.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by an attorney who is experienced and competent in both class action litigation and employment litigation and has previously represented plaintiffs in wage and hour cases.

36.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of the individual litigation claims would result in a

great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

37.    Defendants and other employers throughout the state violate the New Jersey State Wage and Hour Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

38.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.  Whether Defendants employed Plaintiffs and Class members within the meaning of the New Jersey State Wage and Hour Law;

    b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

    c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class members for their work;

d.   Whether Defendants properly notified Plaintiff and Class members of their hourly rate and overtime rate;

e.   Whether Defendants paid Plaintiff and Class members the proper overtime compensation under the New Jersey State Wage and Hour Law;

f.   Whether Defendants paid Plaintiff and Class Members prevailing wage compensation under the New Jersey State Wage and Hour Law;

g.   Whether Defendants provided a proper wage notice to Plaintiff and Class Members per requirements of the New Jersey State Wage and Hour Law;

h.   Whether Defendants provided proper wage statements to Plaintiff and Class members per requirements of the New Jersey State Wage and Hour Law;

i.   Whether Defendants provided proper wage and hour notices to Plaintiffs and Class members, at date of hiring and annually, as required by the New Jersey State Wage and Hour Law;

j.   Where Defendants' violations are knowing and/or willful; and

k.   Whether Defendants engaged in unlawful retaliation.

## **STATEMENT OF FACTS**

**I.    Wage and Hour Allegations**

39.    Plaintiff, a former employee of Defendants, started her employment with Defendants in September 2022 when the company was called Bahar LLC ("Bahar").

40.    Defendant Ahmet Can was an owner of Bahar, which was located at 152 Getty Avenue, Clifton, NJ 07011.

41.    In or about July 2023, the company changed its name from Bahar to Marba Product LLC.

42.    Bahar and Marba have the exact same address at 152 Getty Avenue, Clifton, NJ and are both owned by Defendant Can.

43.    In fact, there was no change in location, equipment, staff, or responsibilities after the company changed its name to Marba.

44.    At the start of her employment, Plaintiff was a production worker in the production department, and later became a dough maker in the same department.

45.    Plaintiff's duties and responsibilities included but are not limited to dough making, packing and labeling the packages.

46.    Plaintiff was employed as a non-exempt employee.

47.    From September 2022 until September 30, 2023, Plaintiff was getting paid $14.00 per hour.

48.    On October 1, 2023, Plaintiff's pay rate increased to $16.50 per hour.

49.    Plaintiff worked a minimum of five (5) days per week and a minimum of 40 hours per week.

50.    Plaintiff worked an average of 10 hours of overtime per week since the start of her employment in September 2022.

51.    Upon information and belief, Defendants recorded the start and end times of each work shift of Plaintiff, as well as each Collective Plaintiff and Class Member.

52.    Upon information and belief, Defendants kept records containing the hours worked, weekly shifts, and wages paid to each Plaintiff.

53.    Plaintiff never received any overtime pay during her employment with Defendants.

54.    Specifically, Plaintiff did not receive compensation at the rate of time and a half the regular rate of each hour worked over forty (40).

55.     From September 2022 until September 30, 2023, Plaintiff's regular hourly rate was $14.00, and her overtime rate was $21.00.

56.     During the period of September 2022 until September 30, 2023, Defendants stripped Plaintiff of at least 2 hours per day of earned overtime, valued at a minimum of $42 per work day.

57.     From October 1, 2023 until the present, Plaintiff's regular hourly rate was $16.50, and her overtime rate was $24.75.

58.     During the period of October 1, 2023 until the present, Defendants stripped Plaintiff of at least 2 hours per day of earned overtime, valued at a minimum of $49.50 per work day.

59.     From October 2023 until on or about September 2024, Plaintiff repeatedly complained to Defendant Mr. Can and demanded payment of her overtime for each hour worked over forty (40) per week. However, Defendant Mr. Can refused and responded that Defendants do not and will not pay overtime.

60.     Defendants, including Mr. Can, were undoubtedly aware that Plaintiff was regularly working overtime hours, which is evidenced by Defendants' records and the fact that Defendants exercised control and supervision over Plaintiff and her work.

61.     In addition, Defendants never instructed Plaintiff not to work overtime hours, profiting from her hard work and long working hours.

62.     Defendants refused and failed to pay Plaintiff for the overtime hours she worked at a rate of time and a half.

63.     For approximately 24 months, from September 2022 until September 2024, Plaintiff worked and was not paid for at least 1040 hours of overtime without compensation.

64.     Between September 2022 and September 2024, the amount of overtime hours that Plaintiff earned and was not compensated for is in an amount not less than $23,790. Plaintiff's damages are continuing and will therefore continue to increase up to the time of trial.

65.     Plaintiff was also not provided with a wage notice upon hire or provided with wage notices annually.

66.     Defendants also failed to provide Plaintiff with proper wage statements with each payment received.

67.     Defendants knowingly and willfully operated their businesses with a policy of not paying the FLSA overtime rate (of time and one-half) or the New Jersey State overtime rate (of time and one-half) to Plaintiff.

68.     Defendants knowingly and willfully operated their businesses with a policy of not providing proper wage notices pursuant to the New Jersey State Wage and Hour Law.

69.     Defendants knowingly and willfully operated their businesses with a policy of not provided proper wage statements pursuant to the New Jersey State Wage and Hour Law.

70.     During this time period, Plaintiff qualified for payment pursuant to the Prevailing Wage Schedule as mandated by the New Jersey State Wage and Hour Law.

71.     Defendants are liable under the FLSA, *inter alia*, for failing to properly compensate Plaintiff.

72.     Plaintiff has been a victim of a policy and plan perpetrated by Defendants that have violated her rights under the FLSA by denying her overtime wages, spread-of-hours wages, and call-in pay.

73.     At all relevant times, Defendants' unlawful conduct, policies, patterns and/or practices described in this Complaint have been willful.

74.     As part of its ongoing business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiff by engaging in a pattern, practice, and/or policy of violating the FLSA, as described in this Complaint.  This ongoing policy, pattern or practice includes, but is not limited to:

    a.  Defendants failed to pay Plaintiff overtime for hours worked over forty (40) in a workweek; and

    b.  Defendants failed to keep accurate and adequate records of hours worked by Plaintiff as required by the FLSA.

75.     Upon information and belief, Defendants' unlawful conduct described in this Complaint has been pursuant to a policy or practice of minimizing labor costs by knowingly refusing and failing to pay employees for overtime hours in violation of the FLSA.

76.     Defendants' unlawful conduct, policies and practices have been widespread, repeated, consistent and ongoing.

77.     Defendants' unlawful conduct, as set forth in this Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiff.

**II.     Plaintiff's Claims of Discrimination**

78.     Plaintiff belongs to the Kurdish ethnic group.

79.     Defendant Mr. Can is Turkish and does not belong to the same ethnic group as Plaintiff.

80.     In July 2023, Defendants hire a new supervisor, Arife Topbas ("Ms. Topbas"), who is also Turkish and does not belong to the same Kurdish ethnic group as Plaintiff.

81.    Ms. Topbas would repeatedly question Plaintiff about her beliefs and support of the Kurds making Ms. Topbas visibly angry at times due to her difference in opinion and opposing strong beliefs.

82.    For instance, Ms. Topbas would get visibly and publically angry at Plaintiff because she supports freedom and the Kurdish ethnicity.

83.    That anger and frustration against Plaintiff was openly displayed at work for other workers to see, including Mr. Can, the owner of the Company.

84.    Despite it being known that Ms. Topbas was getting angry at and targeting Plaintiff due to her ethnicity and ethnic beliefs, Defendant Mr. Can, who witnessed these interactions, would not interfere to address the situation or put an end to the hostility and targeted harassment due to Plaintiff's ethnicity.

85.    No investigation or remedial action was ever taken by Defendants to address the harassment and hostility that Plaintiff was openly subjected to.

86.    In addition, on July 25, 2024, while Plaintiff was working in her designated area in the dough production and packaging department, her supervisor Mr. Topbas ordered her to change department and clean the onion cutting machine that she was not familiar with.

87.    Ms. Topbas gave her that order knowing that Plaintiff had not yet finished her work in the dough production and packaging department, and knowing that other employees and workers were available and capable to do that cleaning job.

88.    During the entire time that Plaintiff worked for Marba, she worked on flat bread making, packaging, and nothing else. This was her specialty and the extent of her responsibilities.

89.    It was obvious that Ms. Topbas was harassing and discriminating the Plaintiff based on her ethnicity and ethnic beliefs, and intimidating Plaintiff to deter her from complaining.

90.    Since becoming a dough maker at Marba's production department in or about July 2023, Plaintiff remained in that department and continued performing the same tasks.

91.    It was only after Ms. Topbas became her supervisor and started questioning and harassing her because of her beliefs and support of the Kurds that she ordered Plaintiff to work in a different department and clean the onion cutting machine, which she was not familiar with and never did before.

92.    Ms. Topbas gave Plaintiff that order despite there being others who could have handled this task while she performed her usual responsibilities.

93.    Defendants knew that Plaintiff never worked with any heavy machinery or worked with the onion machine.

94.    In fact, Plaintiff's supervisor prior to Ms. Topbas did not ask her to work on such machines before.

95.    While cleaning that machine that she was not familiar with, Plaintiff sustained a serious and permanent injury on the job, whereby the tip of her index finger was permanently severed.

96.    Defendant Mr. Can refused to contact 911 to get Plaintiff the assistance needed and instead the manager Mr. Omer told Plaintiff to get in his car so he can take her to the emergency room.

97.    On July 25, 2024, Plaintiff filed a Worker's Compensation claim, copies of which were sent to Defendants.

98.    When Plaintiff was cleared to return to work, her doctors requested the following accommodations and restrictions on her behalf: "No lifting with R arm more than 5 pounds" and "No pushing more than 20 pounds; No gripping/grasping more than 3 pounds."

99.     Defendants received Plaintiff's doctor's request for a reasonable accommodation.

100.    Plaintiff also sent a copy of her doctor's notes requesting a reasonable accommodation directly to her manager.

101.    Since Plaintiff was cleared to return to work until the present, Defendants failed and refused to return Plaintiff to full-time duty and once they learned that she filed this underlying action, they refused provide her with any work.

102.    In fact, when Defendants learned of this action, they stated to her in Turkish, "You sue us. There is no more work for you right now. If there is any work, we will call you."

103.    However, Defendants never called Plaintiff again to return to work.

104.    In addition, even after Plaintiff's doctors removed the need for reasonable accommodations and cleared her to "Return/Continue to work; No restriction – Full Duty" on or about October 8, 2024, Defendants still refused to return her to full duty and eventually permanently removed her from work following the initiation of this action.

105.    Any allegation by Defendants that Plaintiff was removed from the workforce due to purported "lack of work," is false since her termination was immediately after and due to her filing this action, and since Plaintiff was the only employee to be terminated.

106.    In fact, immediately upon Plaintiff's scheduled return to work on September 16, 2024, Defendants sent her home claiming that there was no available work, and therefore no paying her wages.

107.    No one other than Plaintiff was sent home due to alleged lack of work.

108.    Defendants admit that Plaintiff was not provided with work in October 2024, which was after this action was initiated on October 15, 2024 and after they were served with the complaint on October 24, 2024.

109.    By their own admission, Defendants permanently removed, and this terminated Plaintiff, as an employee of the Company in October 2024, which was after this action was initiated and paper were served.

110.    Defendants' termination of Plaintiff in October 2024 is a clear form of discrimination based on her disability and retaliation for filing this lawsuit while she was still an employee of the Company.

111.    Defendants' adverse actions were clearly malicious and intentional.

112.    As a direct and proximate result of Defendants' actions and inactions, Plaintiff has suffered, and continues to suffer, significant economic, career, reputational and emotional harm.

113.    As a result of Defendants' discriminatory, retaliatory, harassing, and hostile conduct, Plaintiff suffered, and continues to suffer from, among other things, mental anguish, emotional distress, loss of enjoyment of life, stress, anxiety, loss of back and future pay, and other monetary damages connected with Defendants' aforementioned violations.

**<u>FIRST CAUSE OF ACTION</u>**
**Fair Labor Standards Act – Unpaid Overtime Wages**

114.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

115.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and the collective and class.

116.    Defendants have failed to pay Plaintiff overtime wages at time and a half for hours that he worked over forty (40) hours in a work-week.

117.    As a result of Defendants' unlawful acts, Plaintiff and the collective and class have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to

recover such amounts, liquidated damages, pre- and post-judgment interests, attorneys' fees, costs, and other compensation pursuant to the FLSA.

118.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

119.    Defendants were or should have been aware that the practices described in this Complaint are unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the collective and class.

## SECOND CAUSE OF ACTION
### New Jersey Statutes – Unpaid Overtime Wages

120.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

121.    Under New Jersey State Wage and Hour Law, Defendants were required to pay Plaintiff and other similarly situated employees one and one-half (1 ½) times their regular rate of pay, which shall not be less than the minimum wage rate, for all hours worked in excess of forty (40) per workweek.

122.    Defendants failed to pay Plaintiff and other similarly situated employees the overtime wages to which they were entitled to under the N.J.S.A. and its supporting regulations.

123.    Defendants willfully violated the N.J.S.A. and its supporting regulations by knowingly and intentionally failing to pay Plaintiff and other similarly situated employees overtime wages.

124.    Due to Defendants' willful violations of the N.J.S.A., Plaintiff and other similarly situated employees are entitled to recover unpaid overtime wages, reasonable attorneys' fees and costs, liquidated damages, and pre-judgment and post-judgment interest.

125.    Defendants were or should have been aware that the practices described in this Complaint are unlawful. Defendants have not made a good faith effort to comply with the N.J.S.A. with respect to the compensation of Plaintiff and the collective and class.

## THIRD CAUSE OF ACTION
### Fair Labor Standards Act – Unpaid Minimum Wages

126.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

127.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and the collective and class.

128.    Defendants have failed to pay Plaintiff the minimum wages.

129.    As a result of Defendants' unlawful acts, Plaintiff and the collective and class have been deprived of minimum wage compensation in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, pre- and post-judgment interests, attorneys' fees, costs, and other compensation pursuant to the FLSA.

130.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

131.    Defendants were or should have been aware that the practices described in this Complaint are unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the collective and class.

## FOURTH CAUSE OF ACTION
### New Jersey Statutes – Unpaid Minimum Wages

132.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

133.    The § 34:11-56A, et seq. and the N.J.S.A. require that employers pay employees a minimum wage for the hours worked in a workweek.

134.    Defendants are Plaintiffs' employers within the meaning of the N.J.S.A.

135.    Defendants failed to pay Plaintiffs and other similarly situated employees the minimum wages to which they were entitled to under the N.J.S.A. and its supporting regulations.

136.    Defendants willfully violated the N.J.S.A. § 34:11-4:1, et seq. by knowingly and intentionally failing to pay Plaintiffs the correct minimum hourly wage.

137.    As a result of Defendants' violations of the N.J.S.A., Plaintiff and other similarly situated employees are entitled to recover unpaid minimum wages, reasonable attorneys' fees and costs, liquidated damages, and pre- and post-judgment interest.

138.    Defendants were or should have been aware that the practices described in this Complaint are unlawful. Defendants have not made a good faith effort to comply with the N.J.S.A. with respect to the compensation of Plaintiff and the collective and class.

### FIFTH CAUSE OF ACTION
### Fair Labor Standards Act – Retaliation

139.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

140.    Defendants have willfully violated the anti-retaliation provisions of the FLSA, which prohibit "any person" from "discharging or in any other manner discriminating against an employee because that employee has engaged in protected conduct." 29 U.S.C. § 215(a)(3).

141.    Each Plaintiff is an "employee" within the meaning of 29 U.S.C. §§ 203(a) and 215(a)(3).

142.    Each Defendant is an "employer" under the FLSA.

143.    Individual Defendant Mr. Can is a "person" within the meaning of 29 U.S.C. §§ 203(e)(1) and 215(a)(3), subject to individual liability for retaliatory conduct.

144.    Plaintiff engaged in "protected conduct."

145.    Defendants subjected Plaintiff to unlawful retaliation under the FLSA.

146.    Defendants' actions are meritless.

147.    Defendants took the foregoing action to discourage Plaintiff and others from participating in this action and to otherwise penalize Plaintiff for asserting her rights.

148.    By the acts described herein and other acts, Defendants harassed, abused, and otherwise discriminated against Plaintiff for protected activity.

149.    Defendants acted intentionally and with malice and reckless indifference to plaintiff's rights under the FLSA and are thereby liable to plaintiff for punitive damages under the FLSA.

150.    As a result of the aforesaid retaliatory activities, Plaintiff suffered and will continue to suffer substantial losses, including but not limited to economic and non-economic damages, lost income, harm to reputation, physical harm, and emotional distress.

151.    As a result of the foregoing, Plaintiff is entitled to all available economic, noneconomic damages, compensatory and punitive damages, back pay, front pay, mental anguish and emotional distress damages, liquidated damages, attorneys' fees, costs, and interest and such other and further relief as this Court deems just in amounts to be determined at trial.

### SIXTH CAUSE OF ACTION
### New Jersey Statutes – Retaliation

152.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

153.    N.J.S.A. § 34:11-56a24 makes it unlawful for an employer to "take a retaliatory action against any employee by discharging or in any other manner discriminating against the employee because the employee has made any complaint to his employer ... that he has not been paid wages in accordance with the provisions of [the NJWHL]."

154.    N.J. Stat. Ann. § 34:1A-1.14 prohibits employers from discharging or in any other manner discriminating against employees who inquire or complaint to the employer regarding any possible violation by the employer of provisions of the act or any state wage, benefit, or tax law.

155.    As described above, Defendants are employers within the meaning of the NJWHL, while Plaintiff was an employee within the meaning of the NJWHL.

156.    As also described above, after Plaintiff engaged in activity protected under the NJWHL, Defendants retaliated as shown herein against Plaintiff.

157.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NJWHL, Plaintiff has suffered, and continues to suffer, economic harm, for which each is entitled to an award of monetary damages and other relief.

158.    Plaintiff is each also entitled to compensatory damages, liquidated damages, and attorneys' fees for Defendants' violations of the NJWHL's anti-retaliation provisions.

159.    Plaintiff was discharged or discriminated against for making complaints or inquiry concerning state wage or benefit laws.

160.    As a result of the foregoing, Plaintiff is entitled to all available economic, noneconomic damages, compensatory and punitive damages, back pay, front pay, mental anguish and emotional distress damages, liquidated damages, attorneys' fees, costs, and interest and such other and further relief as this Court deems just in amounts to be determined at trial.

## SEVENTH CAUSE OF ACTION
### New Jersey Statutes – Conscientious Employee Protection Act

161.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

162.    N.J.S.A. 34:11-4.10, the Conscientious Employee Protection Act (CEPA), is to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.

163.    CEPA specifically aims to prevent retaliation against those employees who object to employer conduct which they reasonably believe to be unlawful or dangerous to the public health, safety or welfare.

164.    Plaintiff disclosed or threatened to disclose to a supervisor or public body activities, policies, or practices of the employers that she reasonably believed were in violation of law, rule or regulation.

165.    Plaintiff objected or refused to participate in activities, policies, or practices which Plaintiff reasonably believed were in violation of law, rule, or regulation.

166.    Written disclosure was not required because Plaintiff reasonably believed that the activities, policies, or practices were known to one or more supervisors including Defendant Mr. Can and Ms. Topbas.

167.    Written disclosure is not required because Plaintiff reasonably feared retaliation of harm because of the disclosures.

168.    Employers, such as Defendants, are prohibited from taking retaliatory action because.

169.    Plaintiff disclosed or threatened to disclose or objected to participating in activities, policies, or practices which Plaintiff reasonably believed were in violation of law, rule or regulation.

170.    Plaintiff attempted to draw attention to, and obtain a remedy for, perceived wrongdoing or improper conduct.

171.    Under N.J. Stat. Ann. § 34:19-7, Defendants were required to conspicuously display, and annually distribute to all employees, written or electronic notices of its employees' protections, obligations, rights and procedures under this act, and use other appropriate means to keep their employees so informed.

172.    Defendants were an "employer" as defined in N.J. Stat. Ann. § 34:19-2.

173.    Defendant Mr. Can was an "employer" and "supervisor" as defined in N.J. Stat. Ann. 34:19-2.

174.    Plaintiff was an "employee" as defined in N.J. Stat. Ann. § 34:19-2.

175.    As shown herein, Defendants engaged in "retaliatory action" as defined in N.J. Stat. Ann. § 34:19-2.

176.    Upper management participated in retaliatory action or showed willful indifference in their conduct.

177.    As a result of the foregoing, Plaintiff is entitled to all available economic, noneconomic damages, compensatory and punitive damages, back pay, front pay, mental anguish and emotional distress damages, liquidated damages, attorneys' fees, costs, and interest and such other and further relief as this Court deems just in amounts to be determined at trial.


**EIGHTH CAUSE OF ACTION**
**Disability Discrimination in Violation of**
**NJLAD, N.J.S.A. §§ 10:5-1 to 10:5-49**

178.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

179.    Defendants violated N.J.S.A. §§ 10:5-1 to 10:5-49, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory and harassing employment practices in which Plaintiff's disability was the motivating, if not the only factor.

180.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

181.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

182.    As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

**NINTH CAUSE OF ACTION**
**Ethnicity Discrimination in Violation of**
**NJLAD, N.J.S.A. §§ 10:5-1 to 10:5-49**

183.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

184.    Defendants violated N.J.S.A. §§ 10:5-1 to 10:5-49, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory and harassing employment practices in which Plaintiff's Kurdish ethnicity was the motivating, if not the only factor.

185.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

186.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

187.    As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

**TENTH CAUSE OF ACTION**
**Failure to Accommodate  in Violation of**
**NJLAD, N.J.S.A. §§ 10:5-1 to 10:5-49**

188.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

189.    Defendants are aware of Plaintiff's disability as she sustained her injury on the job and of her requests for a reasonable accommodation.

190.    However, Plaintiff's requests for a reasonable accommodation were ignored and/or denied.

191.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer severe emotional distress, and other monetary damages, including but not limited to back-pay and front-pay, connected with Defendants' violations and their denial to reasonably accommodate Plaintiff.

192.    As a result of Defendants' unlawful acts, Plaintiff was deprived of back-pay and front-pay in amounts to be determined at trial, and is entitled to recover such amounts, liquidated damages, pre- and post-judgment interests, attorneys' fees, costs, and other compensation.

193.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

194.    As a result of the outrageous and blatantly unlawful conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

**ELEVENTH CAUSE OF ACTION**
**Retaliation in Violation of**
**NJLAD, N.J.S.A. §§ 10:5-1 to 10:5-49**

195.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

196.    Defendants violated N.J.S.A. §§ 10:5-1 to 10:5-49, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in retaliatory actions against Plaintiff for engaging in protected activities, when complaining of the discriminatory, harassing and disparate treatment he was subjected to by Defendants.

197.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

198.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

199.    As a result of the outrageous and blatantly discriminatory and retaliatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## TWELFTH CAUSE OF ACTION
### Hostile Work Environment

200.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

201.    The workplace is permeated with discriminatory intimidation, actions, and ridicule based on Plaintiff's ethnicity, disability, retaliatory conduct, intimidation, and ridicule, all of which were sufficiently severe that they altered the conditions of Plaintiff's employment and created an abusive working environment.

202.    As a result of Defendants' aforementioned unlawful conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

203.    As a result of the outrageous and blatantly unlawful conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## DEMAND FOR TRIAL BY JURY

204.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, respectfully requests the following relief:

A.      Unpaid overtime wages, compensatory and liquidated damages pursuant to the FLSA, the New Jersey laws, and the supporting United States Department of Labor regulations;

B.      A declaratory judgment declaring that the practices and policies complained of in this Complaint are unlawful under FLSA, the New Jersey laws and the supporting United States Department of Labor regulations;

C.      An injunction requiring Defendants to pay all statutorily required wages and benefits pursuant to the FLSA and the New Jersey laws;

D.      An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

E.      An Order certifying this action as a class action pursuant to Fed R. Civ. P. 23 with respect to the New Jersey law claims set forth herein;

F.      Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, e-mail addresses, telephone numbers, dates of birth, job titles, dates of employment and locations of employment of all putative FLSA collective and Rule 23 class members;

G.      Requiring Defendant to provide an accounting to Plaintiffs of the amount of damages incurred by each Plaintiff and the collective and class members;

H.      Authorizing Plaintiff's counsel to send notice(s) of this action to all putative FLSA Collective and Rule 23 class members, including the publishing of notice in a manner that is reasonably calculated to apprise the FLSA Collective and Rule 23 class members of their rights by law to join and participate in this lawsuit;

I.      Designating Lead Plaintiff as the representative of the FLSA Collective members and Rule 23 class members in this action;

J.      Designating the undersigned counsel as counsel for the FLSA Collective members and Rule 23 class members in this action;

K.      Judgment for damages for all unpaid minimum wage compensation and liquidated damages to which Plaintiffs and the FLSA Collective members are lawfully entitled under the FLSA, 29 U.S.C. § 201, et seq., and attendant regulations;

L.      Judgment for damages for all unpaid overtime compensation and liquidated damages to which Plaintiffs and the FLSA Collective members are lawfully entitled under the FLSA, 29 U.S.C. § 201, et seq., and attendant regulations;

M.      Judgment for damages for all unpaid minimum wage compensation and pre- and post-judgment interest to which Plaintiffs and the Rule 23 class members are lawfully entitled under the New Jersey law;

N.      Judgment for damages for all unpaid overtime compensation and pre- and post-judgment interest to which Plaintiffs and the Rule 23 class members are lawfully entitled under the New Jersey law;

O.      An incentive award for the Lead Plaintiff for serving as representative of the FLSA Collective and Rule 23 class members in this action;

P.      Declaring Defendants willfully violated the FLSA and the Department of Labor's attendant regulations;

Q.      Declaring Defendants' violations were intentional, willfully oppressive, fraudulent and/or malicious;

R.      Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in this action as provided by the FLSA and New Jersey law;

S.      Judgment for any and all civil penalties to which Plaintiffs and the FLSA Collective and Rule 23 class members may be entitled; Judgment for damages against all Defendants, jointly and severally, for all lost wages, front pay, liquidated damages, punitive and liquidated damages to which Plaintiffs are lawfully entitled under 29 U.S.C. § 215(a)(3);

T.      Judgment for damages against all Defendants, jointly and severally, for all economic and non-economic damages, punitive damages, attorney's fees, costs, and interest to which each Plaintiff is entitled for retaliation under the FLSA;

U.      Judgment for damages against all Defendants, jointly and severally, for all economic and non-economic damages, punitive damages, attorney's fees, costs, and interest to which each Plaintiff is entitled for retaliation under the New Jersey law; Judgment for damages against all Defendants, jointly and severally, for all lost wages, front pay, liquidated damages, punitive damages to which Plaintiff is lawfully entitled under CEPA;

V.      Judgment for damages against all Defendants, jointly and severally, for all economic and non-economic damages, punitive damages, attorney's fees, costs, and interest to which each Plaintiff is entitled for intentional infliction of emotional distress;

W.      Award Plaintiff equitable relief of back pay, salary and fringe benefits in an exact amount to be determined at trial;

X.      Award Plaintiff full compensation damages under the NJLAD, N.J.S.A. §§ 10:5-1 to 10:5-49, in an exact amount to be determined at trial;

Y.      Award full liquidated and punitive damages as allowed under the NJLAD, N.J.S.A. §§ 10:5-1 to 10:5-49, in an exact amount to be determined at trial;

Z.      Issue a declaratory judgment declaring that the acts and practices complained of herein are in violation of the NJLAD;

AA.     Payment of lost compensation, back-pay, and additional amounts such as liquidated damages;

A.      Reasonable attorneys' fees and costs of the action;

B.      Pre-judgment and post-judgment interest; and

C.      Award such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        October 1, 2025

                            Respectfully Submitted,

                            **LAW OFFICES OF**
                            **RUDY A. DERMESROPIAN, LLC**

                            By: ____*s/ Rudy A. Dermesropian*_____
                                  Rudy A. Dermesropian (RD 8117)
                                  810 Seventh Avenue, Suite 405
                                  New York, NY 10019
                                  Telephone: (646) 586-9030
                                  Fax: (646) 586-9005
                                  *Attorneys for Plaintiff*